## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROSA GRINBERGER, On Behalf of Herself and All Others Similarly Situated, | ) ) ) Case No. |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| ENERGY XXI GULF COAST, INC., GARY C. HANNA, DOUGLAS E. BROOKS, MICHAEL S. BAHORICH, GABRIEL L. ELLISOR, STANFORD SPRINGEL, and CHARLES W. WAMPLER, | ) ) **JURY TRIAL DEMANDED** ) ) ) ) |
| Defendants. | ) ) ) |

Plaintiff Rosa Grinberger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of Energy XXI Gulf Coast, Inc. ("EGC" or the "Company") against EGC and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which EGC will be acquired by MLCJR LLC ("Cox") through Cox's wholly-owned subsidiary YHIMONE, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On January 18, 2018, EGC issued a press release announcing it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell EGC to Cox for $9.10 in cash per EGC common share (the "Merger Consideration"). The Proposed Transaction is valued at approximately $322 million.

3. On August 3, 2018, EGC filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that EGC stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) EGC's financial projections, relied upon by EGC's financial advisor Intrepid Partners, LLC ("Intrepid") in its financial analyses; (ii) the valuation analyses prepared by Intrepid in connection with the rendering of its fairness opinion; (iii) Intrepid's and Company insiders' potential conflicts of interest; and (iv) the sale process leading to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as EGC stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction or seek appraisal.

4. In short, unless remedied, EGC's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote, currently scheduled for September 6, 2018, on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. EGC is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of EGC common stock.

9. EGC is a Delaware corporation and maintains its principal executive offices at 1021 Main Street, Suite 2626, Houston, Texas 77002. EGC engages in the development, exploitation, and operation of oil and natural gas properties primarily offshore on the Gulf of Mexico Shelf ("GoM Shelf"). EGC's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "EGC."

10. Defendant Gary C. Hanna ("Hanna") has been Chairman of the Board and a director of the Company since March 2018.

11. Defendant Douglas E. Brooks ("Brooks") has been Chief Executive Officer ("CEO"), President and a director of the Company since April 2017.

12. Defendant Michael S. Bahorich ("Bahorich") has been a director of the Company since December 2016.

13. Defendant Gabriel L. Ellisor ("Ellisor") has been a director of the Company since April 2018.

14. Defendant Stanford Springel ("Springel") has been a director of the Company since May 2017.

15. Defendant Charles W. Wampler ("Wampler") has been a director of the Company since December 2016.

16. The defendants Hanna, Brooks, Bahorich, Ellisor, Springel and Wampler are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17. Cox is a Texas limited liability company and an affiliate of Cox Oil Offshore, L.L.C. and Cox Operating, L.L.C. (collectively, "Cox Oil"), which are privately-held entities that own and operate assets in the Gulf of Mexico. Cox's assets are located in the Outer Continential Shelf and the shallow waters off the coast of Louisiana.

18. Merger Sub is a Delaware corporation and an indirect wholly-owned subsidiary of Cox.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own EGC common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

20. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of August 3, 2018, there were 33,396,563 shares of EGC common stock outstanding. All members of the Class may be identified from records maintained by EGC or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

21. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

22. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

23. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

24. Defendants have acted, or refused to act, on grounds generally applicable to the

Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Sale Process

25. EGC was formed in December 2016 after emerging from a voluntary Chapter 11 reorganization as the restructured successor of Energy XXI Ltd ("EXXI Ltd").  Throughout this process, EXXI Ltd eliminated more than $3.6 billion of debt.  EGC began trading on the NASDAQ Global Select Market on February 28, 2017.

26. EGC develops, exploits and operates oil and natural gas primarily offshore on the GoM Shelf, as well as onshore in Louisiana and Texas.  The Company owns and operates nine of the largest GoM shelf oil fields ranked by total cumulative oil production to date.  As of December 31, 2017, EGC's total proved reserves were 88.2 MMBOE, of which 84% were oil and 75% were classified as proved developed.  The Company also operated or had an interest in 577 gross producing wells on 421,974 net developed acres, including interests in 55 producing fields.

27. Following a challenging few months after the Company emerged from its restructuring, on March 20, 2017, the Company announced that it retained a financial advisor to assist it in the evaluation, development and implementation of a long-term strategic plan.

28. After the conclusion of the strategic review process in late 2017, the Board and Company management determined to focus on optimizing EGC's stand-alone strategy.  In connection with this decision, on February 28, 2018, EGC announced that the Board approved a 2018 capital expenditure budget in the range of $145 to $175 million.  The budget included planned investment of $65 to $75 million in drilling new wells and recompletions, $10 to $15

million in facilities improvements, and $50 to $60 million in plugging and abandonment expenditures. Defendant Brooks commented on the budget, stating:

> I am pleased that our Board has approved a 2018 capital budget that should better position EGC for success in 2018 and beyond. Improving oil prices and a review of our drilling inventory have increased our ability to initiate our most active drilling program since 2014. We are focused on moving forward with implementing our strategic plan, which includes getting back to drilling. We have contracted a rig that is scheduled to begin drilling our six-well program in late February that will be concentrated in our core central Gulf of Mexico region. The program includes three low-risk development locations; a water injection well to optimize production in the West Delta area; and two exploitation locations that could have a meaningful impact on production and proved reserves if successful. With our operations team striving to drive down costs and enhance production, we expect to efficiently and effectively maintain our focus on operating safely and in an environmentally sensitive manner. We believe that we are well-positioned to participate in future existing Gulf of Mexico operations and potential consolidations due to our very substantial asset base, which includes large legacy fields, an attractive drilling inventory, and extensive facility infrastructure.

29. Beginning in late January and early February 2018, the Company began discussions with Northstar Offshore Ventures LLC ("Northstar"), an affiliate of Orinoco Natural Resources, LLC ("ONR"), regarding EGC's potential divestiture of its western GoM assets that had significant near-term asset retirement obligations ("ARO") (an "ARO transfer transaction").

30. On March 7, 2018, EGC and Cox management met to discuss a potential transaction between the two companies.

31. On April 6, 2018, a bidder referred to in the Proxy Statement as "Party B" indicated its interest in providing offshore oilfield services to EGC and the possibility of a combination of EGC and Party B.

32. On May 1, 2018, Cox emailed a proposal to defendant Brooks to acquire the Company at $6.55 per share in cash.

33. On May 2, 2018, EGC, ONR and certain ONR affiliates executed a non-binding term sheet pursuant to which the Company would transfer its non-core oil and gas assets to an

7

ONR affiliate, that affiliate would assume all related liabilities, including ARO, and EGC would issue to ONR a 35% equity ownership position in the Company.

34. On May 15, 2018, Party B emailed Intrepid a proposal similar to the proposed ONR transaction that had been publicly disclosed, but instead of a 35% ownership position, Party B would receive a 19.99% ownership position in EGC.

35. Throughout May and early June 2018, the Company continued to negotiate with each of Party B, ONR and Cox.

36. On May 24, 2018, EGC and Party B executed a confidentiality agreement.

37. On June 15, 2018, Cox proposed merger consideration of $9.10 per share in cash. Following a Board meeting that same day, the Board instructed Company management to prioritize negotiations with Cox over negotiations with ONR and Party B.

38. Over the next few days, the parties and their advisors continued to negotiate the terms of a merger agreement and transaction.

39. At a June 17, 2018 Board meeting, Intrepid rendered its fairness opinion and the Board approved the Merger Agreement. That night and through the morning of June 18, 2018, the parties and their respective legal advisors finalized the remaining terms of the Merger Agreement.

40. Prior to executing the Merger Agreement, EGC sent a letter to ONR terminating the ONR term sheet. EGC and Cox subsequently executed the Merger Agreement.

**The Proposed Transaction**

41. On June 18, 2018, EGC issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> HOUSTON, June 18, 2018 -- Energy XXI Gulf Coast, Inc. ("EGC" or the "Company") (NASDAQ:EGC) today announced the signing of a definitive

8

agreement with a Cox Oil affiliate ("Cox"), an independent, privately-held entity that owns and operates assets in the Gulf of Mexico, pursuant to which Cox will acquire all the outstanding shares of EGC common stock for $9.10 per fully diluted share in cash, for a total consideration of approximately $322 million. This represents a 21% premium to EGC's closing share price on June 15, 2018.

EGC's Board of Directors unanimously approved the proposed transaction with Cox after evaluating multiple transactions, including a proposal from Orinoco Natural Resources, LLC ("ONR") and its affiliates to assume EGC's non-core asset portfolio and related asset retirement obligations. EGC has ceased all negotiations with ONR and its affiliates regarding the non-binding term sheet announced on May 10, 2018.

Douglas E. Brooks, EGC's Chief Executive Officer and President, commented, "We have sought to protect and maximize shareholder value and have searched for the best way to address EGC's asset retirement obligations, liquidity challenges and need for financing to invest for future growth. We have determined that the best available course of action is a transaction that provides stockholders with a certain cash premium and less execution risk." Mr. Brooks added, "We have been a proponent of consolidation in the Gulf of Mexico for some time. Cox currently operates approximately 35,000 barrels of oil equivalent per day and the combined entities will have production exceeding 61,000 barrels of oil equivalent per day."

Brad E. Cox, Chairman of Cox, said, "We are pleased to have reached this agreement with EGC, which expands our presence in the Gulf of Mexico. The combined entities represent the continuation of our past practices to generate economies of scale through the consolidation of assets without wavering on our commitment to safe and responsible production in the Gulf of Mexico. In addition, Cox strives to preserve and protect the natural resources of the United States while balancing the need to reduce the abandonment liabilities. We look forward to working with EGC's assets and team during the transition and into the future."

The closing of the transaction is subject to customary conditions, including obtaining necessary approvals from EGC's stockholders and regulatory authorities. There is no financing contingency to complete the transaction. The transaction is anticipated to close in the third quarter of 2018.

**Insiders' Interests in the Proposed Transaction**

42.     EGC insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction

9

not available to Plaintiff and EGC's public stockholders.

43.  Notably, it appears that certain Company insiders may have secured employment for themselves upon completion of the Proposed Transaction. In the June 18, 2018 press release announcing the Proposed Transaction, Brad E. Cox, Chairman of Cox, is quoted as stating, "[w]e look forward to working with EGC's assets and team during the transition and into the future."

44.  EGC insiders stand to reap substantial financial benefits for securing the deal with Cox. Each outstanding Company restricted stock units will automatically vest and be converted into the right to receive cash payments. The following tables set forth the value of the payments the Company's non-employee directors and executive officers stand to receive in connection with their restricted stock units:

| Non-Employee Directors | Number of EGC RSUs (#)(1) | Value of EGC RSUs ($)(1) |
|---|---|---|
| Michael S. Bahorich | 42,048 | 382,637 |
| Gabriel L. Ellisor | 70,660 | 643,006 |
| Gary C. Hanna | 152,759 | 1,390,107 |
| Stanford Springel | 28,911 | 263,090 |
| Charles W. Wampler | 42,048 | 382,637 |

| Executive Officers | Number of Unvested Stock Options (#)(1) | Value of Unvested Stock Options ($)(1) | Number of EGC RSUs (#)(2) | Value of EGC RSUs ($)(1) | Estimated Total Consideration ($) |
|---|---|---|---|---|---|
| Douglas E. Brooks* | 115,700 | 0 | 441,049 | 4,013,546 | 4,013,546 |
| T.J. Thom Cepak | 0 | — | 194,300 | 1,768,130 | 1,768,130 |
| Scott M. Heck | 29,724 | 0 | 167,823 | 1,527,189 | 1,527,189 |
| Marguerite Woung-Chapman | 0 | — | 93,264 | 848,702 | 848,702 |

45.  Further, if they are terminated in connection with the Proposed Transaction, EGC's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

10

| Name | Cash[2] | Equity[3] | Pension/ NQDC[4] | Perquisites/ Benefits[5] | Tax Reimbursement[6] | Other[7] | Total |
|---|---|---|---|---|---|---|---|
| **Douglas E. Brooks** *Chief Executive Officer* | $2,296,000 | $4,013,546 | 0 | $ 29,863 | 0 | $33,943 | $6,373,352 |
| **T.J. Thom Cepak** *Chief Financial Officer* | $1,800,000 | $1,768,130 | 0 | $ 44,248 | 0 | $20,986 | $3,633,364 |
| **Scott M. Heck** *Chief Operating Officer* | $1,400,000 | $1,527,189 | 0 | $ 1,148 | 0 | $34,075 | $2,962,412 |
| **Michael S. Reddin**[8] *Former Chief Executive Officer* | — | — | — | — | — | — | — |
| **John D. Schiller, Jr.**[8] *Former Chief Executive Officer* | — | — | — | — | — | — | — |
| **Hugh A. Menown**[8] *Former Chief Financial Officer* | — | — | — | — | — | — | — |
| **Bruce W. Busmire**[8] *Former Chief Financial Officer* | — | — | — | — | — | — | — |
| **Antonio de Pinho**[8] *Former Chief Operating Officer* | — | — | — | — | — | — | — |

**The Proxy Statement Contains Material Misstatements or Omissions**

46. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to EGC's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

47. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) EGC's financial projections, relied upon by EGC's financial advisor Intrepid in its financial analyses; (ii) the valuation analyses prepared by Intrepid in connection with the rendering of its fairness opinion; (iii) Intrepid's and Company insiders' potential conflicts of interest; and (iv) the sale process leading to the Proposed Transaction. Accordingly, EGC stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning EGC's Financial Projections*

48. First, the Proxy Statement omits material information regarding the Company's financial projections relied upon by Intrepid for its analyses.

49. For example, the Proxy Statement states:

> Intrepid calculated the implied valuation of EGC based on the present value of the future pre-tax cash flows expected to be generated from the estimated proved and probable reserves and resources of EGC's upstream assets. In performing this analysis, Intrepid applied discount rates to unlevered free cash flows ranging from, in the case of proved developed producing reserves, 9% to 10%, in the case of proved developed non-producing reserves, 10% to 15%, in the case of proved undeveloped reserves, 15% to 20%, and in the case of probable reserves, 20% to 25%.

Proxy Statement at 48. Yet, the Proxy Statement fails to disclose the future pre-tax cash flows expected to be generated from the estimated proved and probable reserves and resources of EGC's upstream assets, including the unlevered free cash flows for each of the (a) proved developed producing reserves, (b) proved developed non-producing reserves, (c) proved undeveloped reserves, and (d) probable reserves, as well as the definition for how the Company's unlevered free cash flows were calculated.

50. The omission of this material information renders the statements in the "Opinion of EGC's Financial Advisor" and "Certain Prospective Unaudited Financial and Operating Information of EGC" sections of the Proxy Statement false and misleading in contravention of the Exchange Act.

*Material Omissions Concerning Intrepid's Financial Analyses*

51. The Proxy Statement describes Intrepid's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Intrepid's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, EGC' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place

on Intrepid's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to EGC's stockholders.

52. With respect to Intrepid's *Net Asset Value Analysis*, the Proxy Statement fails to disclose: (i) the unlevered free cash flows for each of EGC's (a) proved developed producing reserves, (b) proved developed non-producing reserves, (c) proved undeveloped reserves, and (d) probable reserves; (ii) quantification of the actual inputs and assumptions underlying the respective discount rates selected and used by Intrepid in the analysis; and (iii) future estimated effects of plugging and abandonment costs.

53. With respect to Intrepid's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the actual inputs and assumptions underlying the discount rate of 12.6% and the range of 11.6% to 13.6% selected and used by Intrepid in its analysis; (ii) EGC's terminal year estimated EBITDA, utilized to calculate the range of illustrative terminal values for the Company; (iii) the PV-10[1] of the remaining plugging and abandonment obligations after the 5-year period; and (iv) the implied perpetuity growth rates resulting from the analysis.

54. With respect to Intrepid's *Comparable GoM Company Analysis*, the Proxy Statement fails to disclose any benchmarking analyses Intrepid performed to compare EGC to the selected companies.

---

[1] According to the Company's Form 10-K filed with the SEC on March 21, 2018, "PV-10" refers to the present value of estimated future net revenues of estimated proved reserves using a discount rate of 10%.

55. With respect to Intrepid's *Selected Comparable GoM Transaction Analysis*, the Proxy Statement fails to disclose any benchmarking analyses Intrepid performed for EGC in relation to the target companies.

56. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

57. The omission of this information renders the statements in the "Opinion of EGC's Financial Advisor" section of the Proxy Statement false and misleading in contravention of the Exchange Act.

*Material Omissions Concerning Intrepid's and Company Insiders' Potential Conflicts of Interest*

58. Further, the Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Intrepid and Company insiders.

59. The Proxy Statement sets forth that, "Intrepid has provided certain financial advisory services to EGC and its affiliates from time to time for which Intrepid has received, and may receive, compensation." Proxy Statement at 52. The Proxy Statement fails, however, to disclose the services Intrepid has performed for EGC and its affiliates, as well as the fees Intrepid received for such services. The Proxy Statement further fails to disclose whether Intrepid has performed any services for Cox and Cox Oil, received any fees for such services, and the amount of such fees, if any.

60. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives. EGC stockholders need to be provided with a description of the services and any fees received for these services performed by Intrepid

on behalf of EGC and Cox to compare these services and fees and assess whether Intrepid had a strong historical relationship with Cox that could have impacted its advice provided to EGC.

61. Moreover, the June 18, 2018 press release announcing the Proposed Transaction quotes Brad E. Cox, Chairman of Cox, as stating, "[w]e look forward to working with EGC's assets and team during the transition and into the future." The Proxy Statement fails, however, to disclose the details of any employment-related discussions and negotiations that occurred between Cox and EGC executive officers, including who participated in all such communications, when they occurred and their content, as well as whether any of Cox's prior proposals or indications of interest mentioned management retention in the combined company.

62. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

63. The omission of this information renders the statements in the "Opinion of EGC's Financial Advisor" and "Background of the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background Process of the Proposed Transaction*

64. The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transaction.

65. The Proxy Statement fails to expressly indicate whether the confidentiality agreements that EGC entered into with ONR and Party B, are still in effect and/or contain "don't

ask, don't waive" ("DADW") standstill provisions that are presently precluding these prospective bidders from making a topping bid for the Company.

66. The disclosure of the existence and terms of the confidentiality agreements EGC entered into with ONR and Party B is crucial to EGC stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

67. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

68. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in

16

violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

71.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company, the financial analyses performed by the Company's financial advisor, potential conflicts of interest faced by the Company's banker and Company insiders, and the sales process leading up to the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

72.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction or whether to seek appraisal.

73.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

74.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

75.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76.     The Individual Defendants acted as controlling persons of EGC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of EGC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

77. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

78. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

79. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

80. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

81. As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, EGC's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of EGC, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to EGC stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: August 10, 2018

**O'KELLY ERNST & JOYCE, LLC**

*/s/ Ryan M. Ernst*
Ryan M. Ernst (#4788)
Daniel P. Murray (#5785)
901 N. Market St., Suite 1000
Wilmington, DE 19801
Tel.: (302) 778-4000
Email: rernst@oelegal.com
dmurray@oelegal.com

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*